# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
ERAJ V. TENNEKOON,              )
                                     )
           Plaintiff,    )
                                     )
    v.                 )      Civil Action No. 15-0148 (ABJ)
                                     )
ERIC K. FANNING,             )
Acting Secretary of the Army[1],   )
                                     )
           Defendant.   )
_____)

## MEMORANDUM OPINION

Plaintiff Eraj V. Tennekoon brought this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, against Eric K. Fanning, the Acting Secretary of the Army, in his official capacity, alleging that the Army arbitrarily and capriciously denied plaintiff's request to remove derogatory information from his personnel records. Compl. [Dkt. # 1] ¶ 58.

Plaintiff is an active-duty U.S. Army Captain who served two tours in Iraq. *Id.* ¶¶ 18–20. In August 2008, plaintiff was on leave from Iraq and residing on a military base in New York. *Id.* ¶ 21. Shortly after his return, he was arrested by military police when his wife reported an incident of domestic violence, and the Army ultimately charged him by court martial. *Id.* ¶¶ 21, 28. In an October 2, 2008 Officer Evaluation Report (OER), while the criminal case was pending, plaintiff's supervisors recommended that he not be promoted because his "off-duty behavior severely

---

[1]      The complaint names former Secretary of the Army John M. McHugh as the defendant in this case. Pursuant to Federal Rule of Civil Procedure 25(d), his successor, Acting Secretary Eric K. Fanning, is automatically substituted as the new defendant.

impacted his ability to perform his duties . . . ."  Compl. ¶¶ 24–25; AR53–54[2].  Plaintiff was subsequently acquitted of those charges, Compl. ¶ 29, and he brought this action after multiple unsuccessful efforts to persuade the Army to correct his military record and remove the 2008 OER. *Id.* ¶¶ 37, 43, 48.  The gravamen of his complaint is that the Army's regulations prohibit making reference to unproven derogatory information such as charges that have not yet been adjudicated.

The parties have filed cross-motions for summary judgment.  *See* Def.'s Mot. for Summ. J. [Dkt. # 7] ("Def.'s Mot."); Def.'s Mem. in Supp. of Mot. for Summ. J. [Dkt. # 7-1] ("Def.'s Mem."); Pl.'s Cross-Mot. for Summ. J. & Opp. to Mot. for Summ. J. [Dkt. # 10] ("Pl.'s Cross-Mot."); Pl.'s Mem. of P. & A. in Supp. of Pl.'s Cross-Mot. for Summ. J. & Opp. to Def.'s Mot. for Summ. J. [Dkt. # 10-1] ("Pl.'s Cross-Mem.").  The Court will grant plaintiff's motion in part and deny it in part, and grant defendant's motion in part and deny it in part, because it finds that the Army Board for Correction of Military Records ("ABCMR" or the "Board") failed to respond directly to the legal argument at the heart of plaintiff's request for reconsideration before the Board, which does not appear to be frivolous and could affect the Board's ultimate determination.  The Court will therefore remand this matter to the agency for further action.

## BACKGROUND

Plaintiff currently serves as a Captain in the United States Army, and he is stationed in Grafenwoehr, Germany.  Compl. ¶ 6.  He was originally appointed as a commissioned officer at the rank of second lieutenant in December 2004.  *Id.* ¶ 17.  He served in Iraq from March to July, 2006, and again from September 2007 to August 2008.  *Id.* ¶¶ 18–19; AR140.  In February 2008, plaintiff was promoted to Captain.  Compl. ¶ 20.  Throughout his career in the Army, plaintiff

---

2       The parties filed the 333-page administrative record in this case.  Admin. R. [Dkt. # 6] ("AR").  For ease of reference, the Court cites to the Bates numbers in the bottom right-hand corner of each page of the record.

received exceptional Officer Evaluation Reports and regular career advancements. *See* AR45–46 (2006 OER describing plaintiff as an "outstanding platoon leader" with "unlimited potential for advancement"); AR48 (2007 review describing him as "the best platoon leader I currently rate and in the top 10% of officers . . . in 12 years of service"); AR52 (2008 review noting that plaintiff should be "[p]romote[d] ahead of peers," and describing him as "the best Executive Officer in the Battalion.").

For his "exceptionally meritorious service" in Iraq, plaintiff received a Bronze Star in June 2008.  AR65.  But there was a significant change in the nature of the evaluation plaintiff received after he returned from Iraq to the military base in Fort Drum, New York in August 2008.  Compl. ¶¶ 21, 25–26.  On August 4, 2008, the Military Police were called to plaintiff's home to respond to a report of an alleged domestic disturbance. *Id.* ¶ 21.  Plaintiff was arrested, placed into pretrial confinement, and eventually charged by court martial for the events related to the alleged altercation. *Id.* ¶¶ 22, 28; AR41–42.  The Army alleged that plaintiff "unlawfully grab[bed] [his wife] on the neck and arm with his hands" in the presence of their child, and that plaintiff "criminally possess[ed]" a firearm.  AR41–42; *see* Compl. ¶ 28.  In light of plaintiff's arrest, his Bronze Star was revoked.  AR66.

On October 2, 2008, plaintiff received a Relief for Cause Officer Evaluation Report[3] for the period of January 26, 2008 through August 4, 2008.  AR53–54.  The evaluator commended

---

3       A "Relief for Cause" OER is "required when an officer or warrant officer is relieved for cause . . . ."  Army Regulation 623–3 ¶ 3–58 (Aug. 10, 2007) ("Army Reg."); *see* Def.'s App'x [Dkt. # 7-3] at 6 (attaching relevant portions of Army Reg. 623–3).  Army Regulations define "relief for cause" as "an early release of an officer from a specific duty or assignment directed by superior authority and based on a decision that the officer has failed in his or her performance of duty." *Id.*; *see also* AR9.  The regulations further explain that "duty performance will consist of . . . the accepted professional officer standards . . . .  These standards will apply to conduct both on and off duty." *Id.*

plaintiff's "solid performance" in Iraq, but noted that "[d]espite CPT Tennekoon's strong job performance, he failed to meet the standard we expect of officers by being involved in a domestic disturbance dispute and possessing unregistered firearms." AR54. The report continued, under the section titled "Comment on Potential for Promotion," "Captain Tennekoon has no potential for future service in our Army and absolutely should not be promoted to Major. He fails to meet the standards we expect of all officers in the United States Army." *Id.* The Senior Rater echoed praise for plaintiff's job performance, but concluded:

> Unfortunately while on Environmental Leave, CPT Tennekoon's off duty behavior severely impacted his ability to perform his duties as the Battalion S4 and he could not return to Iraq and rejoin the unit. In the course of a domestic dispute, he demonstrated extremely poor judgment and conduct unbecoming for a US Army officer. His behavior has cost him the respect of his subordinates, peers, and supervisors. As a result, I relieved him of his duties. At this time, he should not be promoted.

*Id.*

One month later, on November 13, 2009, plaintiff appeared before the court martial and was acquitted after trial on all charges. AR41.

On August 23, 2010, Plaintiff appealed his October 2008 Evaluation Report to the Officer Special Review Board (OSRB).[4] He argued that the report was substantively inaccurate when it was issued because it referenced the then-pending allegations, and that after the acquittal, the continued inclusion of the OER in his military record was unjust. *See* AR122–33. The OSRB denied plaintiff's appeal and explained:

> An internal legal opinion was obtained opining that while the court-martial proved beyond a reasonable doubt that the appellant was not guilty of the

---

4       The OSRB is the military board to which appeals of Officer Evaluation Reviews are submitted. Army Reg. 623–3 ¶ 6–7(i); *see also* Ex. 1 to Pl.'s Reply in Supp. of Pl.'s Cross-Mot [Dkt. # 13-1] (containing relevant sections of Army Regulation 623–3). Pursuant to that regulation, the OSRB is bound to assess whether the OER at issue was the product of "[a]lleged bias, prejudice, inaccurate or unjust ratings, or any matter other than administrative error . . . ." *Id.*

> specific charges therein, the general comments regarding the appellant's involvement in a domestic dispute which involved poor judgment and conduct unbecoming an officer, were not undermined by the court-martial results and represented a fair assessment of the situation leading to the basis of the evaluation report.

AR124.  Based on that recitation of the substance of the legal opinion, the OSRB concluded that the "overall merits of this case do not warrant the relief requested." AR121.  That decision was affirmed by the President of the OSRB on April 12, 2011.  AR119.

On July 19, 2011, plaintiff filed an application pursuant to 10 U.S.C. § 1552 with the Army Board for Correction of Military Records, and again requested removal of the 2008 OER from his file on the basis of "substantive inaccuracy."  AR91.  He complained that the OER was based "solely on the allegations of which [plaintiff] was acquitted."[5]  *Id*.  On November 3, 2011, the Board informed plaintiff that it had denied his application.  AR77–78.  It detailed the history of the matter and the evidence presented, *see* AR79–84, and stated:

> Counsel contends the OER is unjust, contains negative markings and comments based entirely on allegations, and should be removed because the applicant was acquitted at court-martial.  However, there is evidence which shows the applicant's unbecoming conduct during a domestic dispute led to him not being able to perform his duties.

> Although the applicant was acquitted of charges, the fact remains that at the time the report was rendered, his senior rater objectively opined he exhibited extremely poor judgment during a domestic dispute that led to charges being preferred.

AR83.

On November 5, 2012, plaintiff requested reconsideration of the Board's decision.  Compl. ¶ 43; AR18–39.  This time, he submitted a twenty-two page memorandum that laid out specific

---

5       Plaintiff also appealed the revocation of his Bronze Star, but that appeal was rejected because plaintiff failed to exhaust his administrative remedies.  AR125.  The decision is not before the Court, and in any event, appears moot in light of evidence that plaintiff was re-issued a Bronze Star in 2012.  *See* AR68.

legal challenges to the Board's decision based on Army Regulations, in particular, Army Regulation 623–3 § 3–23.  *See* AR18–39.  In addition, plaintiff included letters from the two rating officials who prepared the 2008 OER.  AR43–44.  In practically identical letters, the rating officials both indicated that "[a]t the time [the official] wrote the OER, all data reflected in the OER was accurate."  AR43, 44.  The letters go on to say, though, that each rating official "would not have included the negative comments on [plaintiff's] OER had [the official] known he was going to be acquitted at court-martial of the underlying misconduct . . . .  Had the acquittal come before the rating period closed, [the official] would not have referred to the underlying misconduct."  AR43, 44.[6]

On August 1, 2013, the Board denied plaintiff's request for reconsideration.  AR5.  With respect to the letters from the rating officials, it observed:

> The senior rater still states that at the time the OER was written all the data was accurate . . . .  Both the rater and senior rater now support the applicant's request to remove the subject OER from his [personnel file].  They both clearly state that had they known the outcome of the court-martial they would not have mentioned the underlying misconduct that resulted in the applicant's relief for cause.  However, neither rating official contends that the applicant would not still have been relieved for cause due to his inability to perform his duty.

AR9–10.

Plaintiff then brought this two count action against the Secretary of the Army on January 29, 2015.  *See generally* Compl.  In Count I, plaintiff submits that the Board's decision on reconsideration was arbitrary and capricious because the Board "failed to consider in its written decision non-frivolous arguments raised in Plaintiff's application which may have affected the ultimate disposition of the application."  Compl. ¶ 58.  Specifically, plaintiff asserts that the Board

---

6      The letters differ in minor ways.  For example, the senior rating official's letter omits the word "the" before the phrase "negative comments" and omits the word "closed" after "rating period."  *Compare* AR44 *with* AR43.  In all material respects, the letters are identical.  *Id.*

failed to consider his argument that under Army Regulations, neither rater should have made any reference at all to the pending charges, because at the time that the OER was written, the investigation into the domestic violence situation was still ongoing.  Compl. ¶¶ 59–64.  Count II alleges that decision on reconsideration was arbitrary and capricious because the Board "failed to adequately provide a rational connection between the facts of the case and their choice to deny [p]laintiff's application."  Compl. ¶ 66.

On May 11, 2015, defendant moved for summary judgment.  Def.'s Mot.  Plaintiff opposed the motion, and filed a cross-motion for summary judgment on July 10, 2015.  Pl.'s Cross-Mot. Defendant opposed the cross-motion and replied in support of his original motion on August 3, 2015.  Mem. in Opp. to Pl.'s Cross-Mot. & Reply in Supp. of Def.'s Mot. [Dkt. # 11] ("Def.'s Cross-Opp."), and plaintiff replied in support of his cross-motion.  Reply in Supp. of Pl.'s Cross-Mot.  [Dkt. # 13] ("Pl.'s Cross-Reply").

## LEGAL BACKGROUND

### I.     Standard of Review

Summary judgment is ordinarily appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  However, in cases involving review of agency action under the APA, Rule 56 does not apply due to the limited role of a court in reviewing the administrative record.  *Select Specialty Hosp.-Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 21 (D.D.C. 2011).  Under the APA, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the court's role is to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  *Occidental Eng'g Co. v. INS*, 753 F.2d 766,

769–70 (9th Cir. 1985), citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971); *see also Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977).

According to the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C), or "without observance of procedure required by law," *id.* § 706(2)(D). However, the scope of review "is narrow and a court is not to substitute its judgment for that of the agency." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## II.    The Correction of Military Records

Officer Evaluation Reports "are presumed to be 'administratively correct' and to '[r]epresent the considered opinions and objective judgment of the rating officials at the time of preparation.'" *Cone v. Caldera*, 223 F.3d 789, 792 (D.C. Cir. 2000), quoting Army Reg. 623–105 at ¶ 5–32. "An officer seeking a correction must prove 'clearly and convincingly' that the 'presumption of regularity' in the preparation of administrative records should not apply, and that '[a]ction is warranted to correct a material error, inaccuracy, or injustice." *Id.* at 792–93, quoting Army Reg. 623–105 at ¶ 9–7.

The Secretary of the Army, acting through the Board, "may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1); *see also* 32 C.F.R. § 581.3 (describing the function and power of the Board). "The ABCMR begins its consideration of each case with the presumption of administrative regularity. The applicant has the burden of proving an error or injustice by a preponderance of the evidence." 32 C.F.R. § 581.3(e)(2); *see also Frizelle v. Slater*, 111 F.3d 172, 177, 179 (D.C. Cir. 1997).

Once the Board has acted, its ruling on a request for correction must receive particular deference from the court because Congress has accorded the Secretary of the Army wide discretion in deciding when to make corrections to military records.  *See* 10 U.S.C. § 1552(a)(1) ("The Secretary of a military department may correct any military record of the Secretary's department *when the secretary considers it necessary* to correct an error or remove an injustice . . . .  [S]uch corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department.") (emphasis added).  In the case of Board decisions, the Court must apply "an 'unusually deferential application of the arbitrary or capricious standard' of the APA."  *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014), quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989); *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006); *Cone*, 223 F.3d at 793.

The D.C. Circuit has explained that this high level of deference is warranted "to ensure that the courts do not become a forum for appeals by every [officer] dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence."  *Mueller v. Winter*, 485 F.3d 1191, 1198 (D.C. Cir. 2007).  To that end, the Army need only show that the Board's decision "minimally contain[s] 'a rational connection between the facts found and the choice made.'"  *See Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995), quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.  The court must "limit [its] inquiry to whether the 'Secretary's decision making process was deficient, not whether his decision was correct.'"  *Roberts*, 741 F.3d at 158, quoting *Kreis*, 866 F.2d at 1511.

But while the Board's decision is entitled to this level of deference, the D.C. Circuit has also made it clear that a decision must be remanded to the Board if the Board fails to address a petitioner's non-frivolous argument.  *See Frizelle*, 111 F.3d at 177.  In *Frizelle*, a Coast Guard

officer challenged an OER which criticized his performance, management, and interpersonal skills, and led to his being passed over for a promotion to lieutenant. *Id.* at 175. The officer argued, among other things, that the report was unfair because it "failed to give him credit for significant accomplishments," and that "his supervisors were biased against him . . . ." *Id.* at 176. The Coast Guard denied the petition for relief, but the district court granted Frizelle's motion for summary judgment and remanded the matter, finding that the Board had failed to address Frizelle's arguments in detail and explain its reasoning adequately. *Id.* On remand, the Board agreed with two of Frizelle's contentions but rejected the vast majority of them, and it again left the denial of promotion undisturbed. *Id.* The district court granted summary judgment for the Board that time, and Frizelle appealed. *Id.*

On appeal, the D.C. Circuit explained that "an agency's decision [need not] be a model of analytic precision to survive a challenge." *Id.*, quoting *Dickson*, 68 F.3d at 1404 (alterations in original); *see also Dickson*, 68 F.3d at 1404 (A reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"), quoting *Bowman Transp., Inc. v. Arkansas-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974). But it went on to find the district court's ruling in that case to be arbitrary "because the Board's decision did not respond to two of Frizelle's arguments, which do not appear frivolous on their face and could affect the Board's ultimate disposition . . . ." *Id.* at 177.

As other courts in this district have noted, the guidelines in *Frizelle* are "well-established," and "a decision by the ABCMR that fails to address a plaintiff's non-frivolous, material arguments is arbitrary." *Albino v. United States*, 78 F. Supp. 3d 148, 167 (D.D.C. 2015), citing *Frizelle*, 111 F.3d at 177; *see also Rudo v. Geren*, 818 F. Supp. 2d 17, 26–27 (D.D.C. 2011) (the Board must respond in some way to a plaintiff's non-frivolous arguments; it may not simply identify them

without further comment).  As the D.C. Circuit has explained, if the agency chooses to disregard one of plaintiff's contentions:

> it must expressly indicate that it has done so.  Otherwise neither [the plaintiff] nor [the] court would be able to discern whether the [agency] considered and was unpersuaded by those factors or whether the [agency] simply excluded them from its decision making process.  Moreover, if the [agency] excludes those factors from consideration, it must explain its rationale for doing so.

*Puerto Rico Higher Educ. Assistance Corp. v. Riley*, 10 F.3d 847, 853 (D.C. Cir. 1993).

## ANALYSIS

Plaintiff argues that the Board failed to consider legal arguments included in his request for reconsideration that the disputed OER should be removed based on:  (1) Army Reg. 623–3 § 3–23(a), (b), or (c); (2) Army Reg. 623–3 § 3–39(c); and (3) Army Reg. 623–3 § 3–40.  Pl.'s Cross-Mem. at 13–21.

The government counters that the "ABCMR is not required to conform its decision to an 'answer' style format and address Plaintiff's case line by line."  Def.'s Cross-Opp. at 2.  Instead, according to the defendant, the Board needed only to provide "a reason that a court can measure." *Id.* at 3, quoting *Kreis*, 866 F.2d at 1514.  But the Court finds that the Board did not live up to that standard when it addressed plaintiff's arguments based upon section 3–23 of Army Regulation 623–3.

## I.     The Court will grant summary judgment in favor of the plaintiff on Count I because the Board failed to address plaintiff's non-frivolous arguments based on Army Regulation 623–3 § 3–23.

In Count I, plaintiff maintains that the Board's determination on reconsideration was flawed because the decision did not specifically address the legal arguments he advanced which cited Army Regulations, including the regulation that prohibits including references to "unproven derogatory information" in Officer Evaluation Reports.

Army Regulation 623–3 sets forth the Army's system for evaluating its personnel.  Section 3–23 of the Regulation, entitled "[u]nproven derogatory information," provides:

    *a.*  No reference will be made to an incomplete investigation (formal or informal) concerning a Soldier.

    *b.*  References will be made only to actions or investigations that have been processed to completion, adjudicated, and had final action taken before submitting the evaluation to HQDA [Headquarters, Department of the Army].  If the rated official is absolved, comments about the incident will not be included in the evaluation.

    *c.*  This restriction is intended to prevent unverified derogatory information from being included in evaluation reports.  It will also prevent unjustly prejudicial information from being permanently included in a Soldier's OMPF [Official Military Personnel File] such as –

        1)  Charges that are later dropped.

        2)  Charges or incidents of which the rated individual may later be absolved.

    *d.*  Any verified derogatory information may be entered on an evaluation. This is true whether the rated Soldier is under investigation, flagged, or awaiting trial.[7]  While the fact that a rated individual is under investigation or trial may not be mentioned in an evaluation until the investigation or trial is completed, this does not preclude the rating chain's use of verified derogatory information.  For example, when an interim report with verified information is made available to a commander, the verified information may be included in an OER, NCOER [noncommissioned officer evaluation report], or AER [academic evaluation report].  For all reports, if previously reported information later prove to be incorrect or erroneous, the Soldier will be notified and advised of the right to appeal the report in accordance with Chapter 6.

---

7     In his request for reconsideration of the Board's decision, plaintiff took the position that no information could be "verified" for purposes of this regulation until after the Court Martial process is complete.  AR24.  But subsection 3–23(d) plainly contemplates that some information may be "verified" even before a trial on the merits has concluded, and it may then be mentioned in an evaluation.  Army Reg. 623–3 § 3–23(d).

Army Reg. 623–3 § 3–23 (2007) [8]; *see* App'x A to Def.'s Mot. for Summ. J. [Dkt. # 7-3].  While the regulation draws a clear distinction between the use of "unverified" and "verified" information, it does not define the term, identify a standard of proof that must be met, or specify the means by which information could be "verified."

The record reflects that in his request for reconsideration of the Board's decision, plaintiff specifically argued that the Army had violated its own regulations:  he argued that the unverified information should never have been included in the OER, and it must now be removed.  AR24– 25.[9]  Plaintiff asserted that "there is no legal and competent evidence to positively establish any of the negative markings or comments in the OER," AR25, and that "[t]he 'facts' considered at the

---

[8]     Though the parties rely on the 2007 regulations, they have since been amended, the most regulations took effect on January 1, 2016.  *See* Army Reg. 623–3 (2015), http:// www.apd.army.mil/pdffiles/r623_3.pdf.  Because the 2007 regulations were in effect at the time that the contested OER was issued, and because the parties seem to agree that the 2007 regulations apply to this dispute, the Court will rely on that version of the regulations in this opinion.

However, the Court notes that the 2015 regulations include changes in the "Unproven Derogatory Information" section.  Now, the regulation begins with a broad statement that "[a]ny mention of unproven derogatory information in an evaluation report can become an appealable matter if later the derogatory information is unfounded."  Army Reg. 623–3 § 3–19, http:// www.apd.army.mil/pdffiles/r623_3.pdf.  The regulations also state:

> [R]ating officials are not prohibited from commenting on a court-martial (judicial) if completed, but the comments should focus on the behavior that led to the court-martial rather than the court-martial itself.  If the rated Soldier is acquitted at a court-martial . . . comments about the underlying incident will not be included in the evaluation . . . .

*Id.* at § 3–19(b).

[9]     In submissions to the Officer Special Review Board, and the first Army Board of Corrections of Military Records panel, plaintiff's counsel argued only that the Officer Evaluation Report was "substantively inaccura[te]" and "unjust" in light of plaintiff's acquittal.  *See* AR97– 98; 111–12; 122.  However, the motion for reconsideration submitted by new counsel addressed the applicability of each prong of section 3–23 at length.  *See* AR21–39.

time of writing the report were still unverified and would not be verified until the completion of

the General Court-Martial in November 2009." AR24.

The Board responded:

> 1.  The applicant contends that his OER for the period 26 January to 4 August 2008 should be removed from his AMHRR [Army Military Human Resource Record] because it contains negative markings and inaccurate comments that are unjustly prejudicial to his character and career, which were based on allegations of which he was absolved at a general court-martial.

> 2.  In the original ROP [Report of Proceedings], the Board determined that the evidence showed the applicant's unbecoming conduct during a domestic dispute resulted in him not being able to perform his duties.  Even though the applicant had been acquitted of the charges, the fact remained that at the time the OER was rendered, the senior rater objectively opined he had exhibited extremely poor judgment during a domestic dispute that led to charges being preferred.  The senior rater still states that at the time the OER was written all the data was accurate.

AR9.

In rendering this decision, the panel did not mention – and therefore, it is impossible to

measure if it fully or properly considered – any of the subsections of section 3–23.  It failed to

discuss subsections (a), (b), or (c), which govern the use of derogatory information which has not

yet resulted in a conviction, and it makes no finding that the information was properly included as

"verified" material under subsection (d).   When the Board dismisses an argument with any

substance, "it must expressly indicate that it has done so."  *Puerto Rico Higher Educ. Assistance

Corp.*, 10 F.3d at 853.  Therefore, because the Board's opinion is silent on the regulatory issue,

the Court must consider whether the arguments that were ignored were non-frivolous contentions

that could have affected the outcome.  *See Frizelle*, 111 F.3d at 177.

The government argues that plaintiff's regulatory arguments did not merit attention

because only Army Regulation 623–3 § 3–23(d) applies, and the information in plaintiff's OER

was "verified."[10]  Def.'s Cross-Opp. at 3–5.  The government points to the sentence in the Board's decision on reconsideration that observes:  "[t]he senior rater still states that at the time the OER was written all the data was accurate."  *Id.*; AR9.

In other words, the defendant is asking the Court to find that the Board applied the regulation and made a determination that the information was "verified" for purposes of subsection (d) based simply on the Board's quotation of the rater's use of the word "accurate."  *See* Def.'s Cross-Opp. at 4 (dismissing plaintiff's argument that "verified" is different from "accurate" as "semantics," and noting that the ABCMR found "that the information in the OER was accurate and, therefore, 'verified.'").  But none of this is stated in the Board's opinion, and the Supreme Court has been clear that "an agency's action must be upheld, if at all, on the basis articulated by the agency itself."  *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50, citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962), *SEC v. Chenery*, 332 U.S. 194, 196 (1947), and *Am. Textile Mfrs. Inst. v. Donovan*, 452 U.S. 490, 539 (1981).

Furthermore, the Court cannot simply assume that the Board's repetition of the word "accurate" satisfies the regulation.  It is not at all clear whether the rating official was saying that "at the time," the data was "accurate" because charges were in fact pending at the time or because the underlying facts had been established to the rater's satisfaction.  And the Board's reliance on the rater's statement without more obscures the question of whether, in the judgment of the Board, the raters could properly rely on the verifiable fact that the charges had been lodged, or whether

---

10    The government also argues that subsections (a) and (b) of Army Regulation 623–3 § 3–23 are "irrelevant" because the OER did not contain a "specific reference to any ongoing investigation."  Def.'s Mem. at 9–10.  But subsection (b) also refers to "comments about the incident," and subsection (c) states broadly that the "restriction is intended to prevent unverified derogatory *information*" – not simply statements about the existence of an investigation – "from being included in evaluation reports."  Army Reg. 623–3 § 3–23 (emphasis added).

the Board concluded that the rating officials' comments were fairly based upon some independent confirmation.

Moreover, the two terms are not synonymous. According to the Oxford English Dictionary, the adjective "accurate" means "exact, precise; conforming exactly with the truth or with a given standard; free from error." *See* Oxford English Dictionary, http://www.oed.com /view/Entry/1283, definition (3). By contrast, it defines the verb "verify" as "to prove by good evidence or valid testimony; to testify or affirm formally or under oath."[11] http://www.oed.com /view/Entry/222511, definition (1).

The Board's recitation of the word "accurate," then, does not suffice as a finding that the raters relied on proven facts, as opposed to the mere pendency of an allegation, to support the OER at issue. Indeed, the record is completely silent on how the raters came to learn about the domestic incident, and what information they relied upon when they drafted their evaluation. Army Regulations are clear that unverified information must not be included in an evaluation, and they cite as an example the very situation at issue in this case: "this restriction . . . will . . . prevent unjustly prejudicial information" – such as information about "charges or incidents of which the rated individual may later be absolved" – from being permanently included in a soldier's personnel file. Army Reg. 623–3 § 3–23(c). The Board's failure to respond directly to plaintiff's non-frivolous argument and its failure to articulate whether or how the regulatory requirements were satisfied in this case render its decision arbitrary and capricious under the APA. *See Frizelle*, 111 F.3d at 177.

---

11      Merriam-Webster Dictionary similarly defines "accurate" as "free from mistakes or errors." Merriam-Webster, http://www.merriam-webster.com/dictionary/accurate. It defines the verb "verify" as "to establish the truth, accuracy, or reality of." Merriam-Webster, http://www.merriam-webster.com/dictionary/verified.

The government argues that even if the Court were to find that the Board failed to consider plaintiff's arguments, any error was harmless.  Def.'s Cross-Opp. at 6–7, citing *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 449 (2d Cir. 2013).  Plaintiff contends that harmless error is not the appropriate standard, but he does not put forth a standard of his own.  *See* Pl.'s Cross-Reply at 7–8.

In *Frizelle,* the D.C. Circuit made clear that a remand is required if an unanswered nontrivial argument "could affect the Board's ultimate disposition," *Frizelle*, 111 F.3d at 177, and plaintiff has satisfied that standard.  The regulations state that unverified information, and in particular, information about as-yet-unproven criminal allegations, has no place in an official personnel file.  If the Board finds that the raters relied upon unverified information, it would be required under the regulations to remove the contested OER.

The Board also concluded that the Relief for Cause OER was not issued because of the domestic violence allegation itself, but rather because in the course of that incident, plaintiff "exhibited extremely poor judgment."  AR9.  The Court accords substantial deference to the military to determine what sanctions should flow from an exercise of bad judgment by one of its officers.  *See Cone*, 223 F.3d at 793.  But again, it is unclear whether the raters' conclusions that the officer exhibited poor judgment or engaged in conduct unbecoming to an officer were predicated on verified information or merely the pendency of as yet unproven charges.

In sum, on Count I, as to Army Regulation 623–3 § 3–23, the Court finds that the Board failed to grapple with what appear to be substantial issues.  *See Mori v. Dep't of Navy*, 917 F. Supp. 2d 60, 64 (D.D.C. 2013).  Because the Court cannot discern "a rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, citing *Burlington Truck Lines*, 371 U.S. at 168, the Court cannot sustain the agency's action, even under the

"unusually deferential" standard of review.  *See Kreis*, 866 F.2d at 1514.  For those reasons, the Board's decision will be remanded to the Board for further explanation of the reasons that underlie its decision.  *See Frizelle*, 111 F.3d at 177.  In light of the remand, the Court need not consider whether the Board's decision concerning the inclusion of derogatory information was rationally connected to the facts for purposes of Count II.

## II.    The Court will grant summary judgment to defendant on Count I and Count II as to Army Regulation 623–3 § 3–39(b) and 3–40.

In Count I, plaintiff also alleges that the Army failed to respond to his argument that the Officer Evaluation Report should have been removed from his personnel records under Army Regulations 623–3 §§ 3–39(c) and 3–40.  Compl. ¶¶ 63–64; Pl.'s Cross-Mem. at 8, 19–21; AR20-21, 26, 27, 28, 32.

Army Regulation 623–3 § 3–40 provides:  "[i]f rating officials become aware of information that would have resulted in a higher evaluation of a rated Soldier, they will take action to alter or remove the report . . . ."  Plaintiff argued that once he was acquitted, his rating officials should have taken action to remove the report because the report was no longer factual.  AR27, 32.  He submits that such a change is authorized by section 3–39(b), which prohibits an OER from being "altered, withdrawn,  or replaced with another report," but includes the following exception:

> An exception to paragraph 3–39b is granted for OERs only when –
>
> > (1) Information that was unknown or unverified when the report was prepared is brought to light or verified.
> >
> > (2) This information is so significant that it would have resulted in a higher or lower evaluation had it been known or verified when the report was prepared.

Army Reg. 623–3 § 3–39(c).

In support of this argument, plaintiff provided the Board with letters from his rating officials, who both stated, in practically identical language, that:

> [The rater] would not have included the negative comments on his OER had [the rater] known he was going to be acquitted at court-martial of the underlying misconduct. [The rater] fully support[s] his appeal to have this OER removed from his OMPF. Had the acquittal come before the rating period closed, [the rater] would not have referred to the underlying misconduct.

AR43–44.

But the Board did not overlook or ignore this line of attack. It specifically addressed the letters and rejected them, noting that notwithstanding the letters, "neither rating official contends that the applicant would not still have been relieved for cause due to his inability to perform his duty." AR10.

Therefore, since the Army did not fail to address this argument, the Court must go on to consider, applying the appropriate level of deference, whether defendant's explanations were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Plaintiff cannot rely on the letters from his rating officials to prove that the Board's decision was not supported by substantial evidence, because in this Circuit, after-the-fact letters from rating officials are not dispositive. *See Musengo v. White*, 286 F.3d 535, 539 (D.C. Cir. 2002) (explaining that "raters may attempt to retract otherwise accurate assessments when requested to do so by their disappointed officers"), citing *Cone*, 223 F.3d at 794 (similar letters "often reflect retrospective thinking, or second thoughts, prompted by an appellant's non-selection or other unfavorable personnel action claimed to be the sole result of the contested report," and concluding that such a letter from an officer should be viewed as expressions of "sympathy for the pleas of his subordinates, rather than as accurate statements of his original intent.").

As those cases have concluded, the letters that plaintiff submitted are not probative because they reflect the rating officials' "second thoughts" and not their actual conclusions at the time. The

Army adequately responded to plaintiff's argument by identifying it and noting that it was not persuaded by it.  Given the high level of deference that the Court accords the decisions of the military, *see Roberts*, 741 F.3d at 158, the Court concludes that the Board's decision, while brief, "minimally contain[s] 'a rational connection between the facts found and the choice made'" because it reflects that the Board considered the letters and explains why it found them to be unpersuasive.  *See Dickson*, 68 F.3d at 1404, quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.  And, the Court is not in a position to comment on whether that decision was correct, because, as the D.C. Circuit has explained, the Court must "limit [its] inquiry to whether the 'Secretary's decision making process was deficient, not whether his decision was correct." *Roberts*, 741 F.3d at 158, quoting *Kreis*, 866 F.2d at 1511.  The Court will therefore grant summary judgment on Count I and II to defendant insofar as those counts are based on Army Regulation 623–3 §§ 3–39 and 3–40, and the failure to grand reconsideration based upon the rating officials' letters.

## CONCLUSION

For the foregoing reasons, the Court will grant summary judgment in favor of plaintiff on that portion of Count I based on Army Regulation 623–3 § 3–23, and grant summary judgment in favor of defendant on Counts I and II insofar as they are based on Army Regulations 623–3 § 3–39 and 623–3 § 3–40 and the decision of the ABCMR to disregard the rating officials' letters. The Court will remand the matter to the Board to address plaintiff's argument based on Army Regulation 623–3 § 3–23 by July 15, 2016.  The Court will retain jurisdiction while the remand is pending.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  January 15, 2016